916 So.2d 557 (2005)
William Gregory EASON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-02500-COA.
Court of Appeals of Mississippi.
December 13, 2005.
*558 David L. Walker, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, C.J., BRIDGES and GRIFFIS, JJ.
BRIDGES, J., for the Court.

PROCEDURAL HISTORY
¶ 1. On November 10, 2004, a jury sitting before the Second Judicial District of the Tallahatchie County Circuit Court found William Gregory Eason guilty of one count of conspiracy to commit voter fraud and eight counts of voter fraud. Consequently, the circuit court sentenced Eason to a one year sentence for conspiracy to commit voter fraud. As for the eight counts of voter fraud, the circuit court sentenced Eason to another one year sentence, set to run consecutive with the first one year sentence, and seven additional one year sentences, all to run concurrent with the second one year sentence. In effect, the circuit court sentenced Eason to incarceration for two years. Post-trial, Eason filed unsuccessful motions for judgment notwithstanding the verdict or, alternatively, for a new trial. Aggrieved, Eason advances two issues, listed verbatim:
I. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S OBJECTION TO THE STATE'S "SEND-THE-MESSAGE" TYPE ARGUMENT.

*559 II. THE TRIAL COURT ERRED BY SUSTAIN[IN]G THE STATE'S OBJECTION TO DEFENSE COUNSEL'S LINE OF CROSS-EXAMINATION OF MINNIE SAULSBERRY.
Finding no error, we affirm.

FACTS
¶ 2. On August 26, 2003, Jerome Little challenged incumbent Eddie Meeks in a run-off election for the position of District Five Supervisor for Tallahatchie County, Mississippi. Jerome Little's campaign recruited help from many people. Two of those people were Greg Eason and Minnie Saulsberry.
¶ 3. Between the primary election and the run-off election, Little sent Saulsberry to Tutweiler, Mississippi to pass out campaign literature. Once she finished that assignment, Little told her to assist his cousin, Greg Eason, with absentee ballots. Additionally, Eason and Saulsberry were in charge of getting absentee voters to the Tallahatchie County Circuit Clerk's office; particularly, those voters without transportation. Saulsberry told Little that she was not familiar with the absentee voting process. Little eased her mind when he explained that Eason, familiar with the absentee voting process, would handle the absentee voters. Little expected Saulsberry to provide Eason with transportation.
¶ 4. On Wednesday, August 20, 2003, Eason and Saulsberry drove around Tallahatchie County and looked for potential absentee voters. They stopped at a popular congregating spot, approached Willie McNutt and Johnnie Mae Allison, and offered to take them to the circuit clerk's office so they could vote absentee. Willie McNutt did not know who the candidates were and only voted because Eason and Saulsberry asked him to vote. Johnnie Mae Allison testified that she voted because Eason and Saulsberry offered her three cans of beer, which they gave her after she voted.
¶ 5. On Eason's instruction, McNutt told the deputy clerk that he would be out of the county on election day, though he knew that was not true. According to McNutt, neither Eason nor Saulsberry offered him any money for his vote but Saulsberry gave him a couple cans of beer.
¶ 6. Later, Eason and Saulsberry visited Christine Beler's house. They asked Beler to get some people to vote the next morning. Beler told them that she would get a group of people to vote if Eason and Saulsberry put gas in her car. On Thursday, August 21, 2003, Christine Beler fulfilled her promise. She drove her car to the circuit clerk's office to vote absentee. She did not go alone, though. She brought Patricia Hervey, Sharon Greer, and Dorothy Fultz with her.
¶ 7. Eason and Saulsberry met Beler and her group at the circuit clerk's office. Eason told the group of voters that they could not vote absentee unless they told the clerk they would be out of the county or working on election day. Further, Eason told them that he could help them vote only if they asked the deputy clerk for Eason's help.
¶ 8. Patricia Hervey voted "to get it over with" and because she heard that someone would "make it worth her while" if she voted. Patricia Hervey and Sharon Greer told the deputy clerk that they would be out of the county on election day, though they knew that was not true.
¶ 9. When Patricia Hervey tried to vote absentee, Eason intervened. According to Patricia's testimony, the deputy clerk gave Eason an absentee ballot which Eason then gave to her. She voted for Eddie Meeks, but Eason told the deputy clerk that Patricia "messed up." Eason then *560 gave Patricia's ballot back to the deputy clerk, who marked it as a "spoiled" ballot. Next, the deputy clerk gave Patricia another ballot. On that ballot, Eason pointed where he wanted Patricia to vote, so she complied.
¶ 10. Sharon Greer testified that she voted for Jerome Little because Eason stood over her and told her to vote for him. Dorothy Fultz also testified that Eason told her for whom to vote. This bothered Sharon Greer and Dorothy Fultz to the point that they voted again on election day. Sharon Greer testified that she voted again because Eason made her vote for Jerome Little but she wanted to vote for Eddie Meeks. Dorothy Fultz testified that she voted again because she did not like that Eason told her for whom to vote.
¶ 11. After Beler's group voted, they went back to Beler's house. Eason and Saulsberry met them there. Patricia Hervey and Sharon Greer testified that Eason asked them whether they wanted five dollars or beer. Patricia Hervey and Sharon Greer responded that they wanted both, so Eason and Saulsberry gave them both, though the money was in the form of a check made out to Beler. Beler cashed the check and divided the money. Dorothy Fultz testified that she did not want to go with Beler when Beler cashed the check. Additionally, Dorothy Fultz testified that she asked Beler to use her portion of the money and buy her a pack of cigarettes. Beler complied.
¶ 12. On Friday, August 22, 2003, Eason and Saulsberry went to Dorothy Fultz's house. They did not go to meet Dorothy though, as she voted the previous day. Instead, they met Dorothy's daughter, Gwen Fultz and got another group of individuals to vote absentee.
¶ 13. Gwen drove herself, her brother Booker Greer, and Booker's girlfriend Jeanette Wallace to the circuit clerk's office. Additionally, Gwen's other brother, Jimmy Fultz, rode to the circuit clerk's office with Eason and Saulsberry.
¶ 14. Gwen Fultz and Booker Greer testified that they voted absentee because Eason told her that he would give her five dollars and a beer if she did. Jimmy Fultz testified that he voted absentee because Eason told him he could have five dollars and "refreshments" if he voted. On Eason's instruction, Gwen, Jimmy, and Booker told the deputy clerk that they would be out of town on election day, though they knew that was not true.
¶ 15. Booker testified that Eason gave him a beer after he voted and, a couple days later, Eason gave him five dollars. Gwen got a can of beer for her vote, but she never got the five dollars Eason promised her. When the investigator from the attorney general's office approached Gwen, Gwen thought the investigator visited her to finally give her the five dollars Eason promised her. As for Jimmy, Eason gave him some beer but did not give him the five dollars he promised him. Jimmy testified that he "clowned" with Eason and thereby convinced Eason to pay him the five dollars he promised.
¶ 16. Jeanette Wallace's attempt to vote was one of the catalysts that led to the attorney general's investigation. Jeanette tried to vote absentee but could not. She testified that she could not vote because "her name was not on the books." While she was at the circuit clerk's office she ran across Eddie Meeks. She told Meeks that Saulsberry and Eason offered her beer and money.
¶ 17. After the election, Eddie Meeks filed a complaint with the state attorney general's office. Meeks accused Jerome Little of voter fraud and buying votes. After the attorney general's office investigated *561 Meeks's allegations, Minnie Saulsberry and Greg Eason were arrested.
¶ 18. On April 5, 2004, Eason was indicted on one count of conspiracy to commit fraud and fourteen counts of voter fraud. Specifically, the indictment against Eason alleged that Eason promised items of value to induce people to fraudulently vote absentee ballots.
¶ 19. On November 8, 2004, Eason went to trial before the Tallahatchie County Circuit Court. Minnie Saulsberry, having pled guilty prior to trial, testified for the prosecution. Eason testified on his own behalf. He admitted that he gave voters beer and money but denied that they were payment for votes. On November 10, 2004, the jury found Eason guilty of one count of conspiracy and eight counts of voter fraud.

ANALYSIS

I. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S OBJECTION TO THE STATE'S "SEND-THE-MESSAGE" TYPE ARGUMENT.
¶ 20. During the prosecution's closing argument, counsel for the prosecution stated "I am confident that the twelve of you are going to get back and say we are going to put a stop ... to you going out there...." Before counsel could finish her statement, counsel for Eason objected and claimed that the prosecution advanced an impermissible argument known as the "sending the message" argument. Eason's attorney then requested a mistrial, which the circuit court denied. On appeal, Eason argues that the circuit court erred when it denied his motion for a mistrial.
¶ 21. To determine whether the argument was improper, we must analyze the context in which the argument arose. Williams v. State, 522 So.2d 201, 209 (Miss.1988). We must also weigh the impact of the prosecutor's remark, taking defense counsel's opening argument into account. Id. What is more, according to Rule 3.12 of our Uniform Rules of Circuit and County Court Practice, a trial judge may declare a mistrial only when the harm done would render the defendant without hope of receiving a fair trial. Reed v. State, 764 So.2d 511(¶ 7) (Miss.Ct.App. 2000) (citing Roundtree v. State, 568 So.2d 1173, 1178 (Miss.1990)). If a "prejudicially incompetent matter or misconduct" occurs before a jury, a trial judge should declare a mistrial if the trial judge cannot cure the damaging effect with an admonition or an instruction. Davis v. State, 530 So.2d 694, 698 (Miss.1988).
¶ 22. In Williams v. State, 522 So.2d 201 (Miss.1988), the Mississippi Supreme Court reviewed an allegation that a prosecutor used a "sending-the-message" argument during his closing argument. In Williams, the prosecutor told the jury "[b]y your vote, you can make the statement clearly, steadfastly, and unequivocally that law or order exists for everyone in Harrison County." Id. at 208. Our supreme court held that the argument was improper and stated:
The jurors are representatives of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to "send a message" but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution *562 wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.
Id. at 209.
¶ 23. Improper argument notwithstanding, the supreme court affirmed because the defendant in Williams failed to provide an adequate record. Id. Specifically, the supreme court stated that it could not "examine the closing arguments to determine the circumstances surrounding the remark because the transcript was omitted at the request of defense counsel." Id. Further, the supreme court reiterated "that the necessary transcripts are to be made a part of the record, and that the appellant bears the burden of presenting a record which is sufficient to undergird his assignments of error." Id.
¶ 24. As in Williams, we are precluded from reviewing the entire context in which the argument arose. The prosecution's closing argument is in the record, but counsel for Eason's closing argument is not. We are to weigh the impact of the prosecutor's remark, which we can do easily enough. However, we are also to take defense counsel's "opening salvo" into account. Because Eason's "opening salvo" is not in the record, we can hardly weigh it against the prosecutor's remark. As in Williams, "the necessary transcripts are to be made a part of the record, and ... the appellant bears the burden of presenting a record which is sufficient to undergird his assignments of error." Id. Because Eason failed in that regard, we find no error in the trial judge's decision.
¶ 25. Insufficient record notwithstanding, it should be noted that the prosecutor did not complete her statement regarding putting a stop to Eason's behavior. The prosecutor did, however, clarify her statement after Eason's objection. When the prosecutor mentioned "put a stop" to Eason's behavior, she specifically referred to Eason. The prosecutor clarified that she wanted the jury to "hold [Eason] accountable for his actions." The prosecutor did not mention sending a message to criminals. If any inference of "sending the message" occurred, the prosecutor asked the jury to send the message to Eason, rather than to the public. We certainly cannot say that the prosecutor's incomplete statement made it impossible for Eason to receive a fair trial. The trial court did not abuse its discretion when it denied Eason's motion for a mistrial. We affirm.

II. THE TRIAL COURT ERRED BY SUSTAIN[IN]G THE STATE'S OBJECTION TO DEFENSE COUNSEL'S LINE OF CROSS-EXAMINATION OF MINNIE SAULSBERRY.
¶ 26. Saulsberry testified for the State. On cross-examination, counsel for Eason asked Saulsberry if she "wanted to see Mr. Eason go to prison or walk out of here today?" The prosecution objected to the question. The trial judge said, "I don't think that's a proper question." Counsel for Eason did not rephrase the question or continue with that line of questioning. Here, Eason claims that the circuit court's decision to sustain the prosecution's objection results in reversible error.
¶ 27. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence." Farmer v. State, 770 So.2d 953, 958(¶ 15) (Miss.2000). "The scope of cross-examination, though ordinarily broad, is within the sound discretion of the trial court and the trial court possesses inherent power to limit cross-examination to relevant matters." Smith v. State, 733 So.2d 793(¶ 37) (Miss.1999). "Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." Farmer *563 v. State, 770 So.2d 953, 958(¶ 15) (Miss. 2000).
¶ 28. Eason claims that the circuit court violated his right to confront witnesses against him as guaranteed by article 3 section 26 of the Mississippi Constitution and the Sixth Amendment to the United States Constitution. According to Eason, he had a right to cross-examine Saulsberry as to her interest in the case because Saulsberry made a plea deal with the State in exchange for her testimony. The record does not indicate that Saulsberry had a deal with the prosecution, but one can see that such an inference exists. Eason attempted to establish that Saulsberry had an interest in seeing Eason convicted, as the State would recommend a sentence for Saulsberry. According to Eason, Saulsberry had a motive to testify falsely.
¶ 29. "A witness on cross-examination may be interrogated regarding his interest, bias or prejudice in a case." Smith v. State, 733 So.2d 793, 801(¶ 37) (Miss.1999). In Suan v. State, 511 So.2d 144, 148 (Miss.1987) the Mississippi Supreme Court held that a circuit court erred when it did not permit the defendant to establish that the prosecution's principal witness's "neck was on the line if he did not testify in a manner pleasing to the prosecution." The supreme court cited the principle that "one accused of a crime has the right to broad and extensive cross-examination of the witnesses against him, and especially is this so with respect to the principal prosecution witness." Id.
¶ 30. Arguably, Eason had the right to expose Saulsberry's potential bias and interest in the outcome of his case. Along the same line of thought, Eason would experience prejudice if the circuit court denied him that right. We examined the record, and it clearly shows that the prosecution and Eason brought Saulsberry's potential bias forth despite the trial judge's limitation on the question at issue.
¶ 31. The prosecution had Saulsberry testify that she pled guilty to conspiracy and multiple counts of voter fraud. Saulsberry admitted that she was guilty. Saulsberry testified that the State had not threatened her. Not only that, Eason pointed out that Saulsberry pled guilty but had yet to be sentenced on that plea. Eason pointed out that Saulsberry expected the prosecutors to recommend a sentence for Saulsberry. Eason suggested that Saulsberry had a deal with the prosecution, though he did not directly ask Saulsberry whether she did have such a deal. Instead, he asked Saulsberry whether she wanted to see Eason go to prison. After the trial judge found the particular question to be improper, counsel for Eason did not rephrase his question or revisited the issue of whether Saulsberry testified to please the prosecution. Altogether, Eason put Saulsberry's potential bias before the jury as a suggestion, but never asked a question that required a firm answer as to whether Saulsberry and the prosecution had a deal.
¶ 32. When the jury heard Saulsberry testify that she pled guilty, had yet to be sentenced, and expected the prosecution to recommend her sentence, Eason put forth Saulsberry's potential bias. As such, we cannot say that the trial judge refused to let Eason explore Saulsberry's potential bias. Truly, the trial judge did not let Eason ask Saulsberry whether she wanted to see him go to prison, but that does not mean that the trial judge forbid Eason from examining Saulsberry's potential bias. As such, we cannot say that the trial judge abused his substantial discretion when he did not allow Eason to ask Saulsberry whether she wanted to see Eason go to prison. Accordingly, we affirm the circuit court's decision.
*564 ¶ 33. THE JUDGMENT OF THE TALLAHATCHIE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, CONSPIRACY TO COMMIT VOTER FRAUD AND SENTENCE OF ONE YEAR TO RUN CONCURRENTLY TO THE SENTENCES IN COUNTS IV AND VIII; COUNT IV, VOTER FRAUD AND SENTENCE OF ONE YEAR; COUNT VI, VOTER FRAUD AND SENTENCE OF ONE YEAR TO RUN CONCURRENTLY TO THE SENTENCES IN COUNTS I, IV AND VIII; COUNT VIII, VOTER FRAUD AND SENTENCE OF ONE YEAR TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT IV; COUNT IX, VOTER FRAUD AND SENTENCE OF ONE YEAR TO RUN CONCURRENTLY TO THE SENTENCES IN COUNTS I, IV, VI AND VIII; COUNT X, VOTER FRAUD AND SENTENCE OF ONE YEAR TO RUN CONCURRENTLY TO THE SENTENCES IN COUNTS I, IV, VI, VIII AND IX; COUNT XI, VOTER FRAUD AND SENTENCE OF ONE YEAR TO RUN CONCURRENTLY TO THE SENTENCES IN COUNTS I, IV, VI, VIII, IX AND X; COUNT XII, VOTER FRAUD AND SENTENCE OF ONE YEAR TO RUN CONCURRENTLY TO THE SENTENCES IN COUNTS I, IV, VI, VIII, IX, X AND XI; COUNT XIV, VOTER FRAUD AND SENTENCE OF ONE YEAR TO RUN CONCURRENTLY TO THE SENTENCES IN COUNTS I, IV, VI, VIII, IX, X, XI AND XII, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND FINE OF $500 AND $100 ASSESSMENT FEE TO THE VICTIM'S COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TALLAHATCHIE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.