956 So.2d 281 (2006)
Joseph Michael CRIDISO, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00413-COA.
Court of Appeals of Mississippi.
October 10, 2006.
Rehearing Denied February 27, 2007.
*283 Jonathan Michael Farris, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, C.J., SOUTHWICK and IRVING, JJ.
IRVING, J., for the Court.
¶ 1. Joseph Michael Cridiso was convicted of one count of business burglary by a jury and was sentenced by the Forrest County Circuit Court to serve seven years in the custody of the Mississippi Department *284 of Corrections, without the possibility of any form of early release or parole, as a non-violent habitual offender. Aggrieved, Cridiso appeals and asserts that the trial court erred (1) in denying his motion to quash the indictment and in allowing the State to amend the indictment, (2) in denying his motion in limine seeking to prevent the admission of certain evidence, and (3) in denying his motion for a directed verdict, peremptory instruction, and judgment notwithstanding the verdict. Cridiso also argues that the verdict was against the overwhelming weight of the evidence and was manifestly wrong as a matter of law.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On March 31, 2003, at around five to five-thirty in the morning, Lori Howard arrived at her place of employment, the Fuelmart in Petal, Mississippi. Howard discovered that the store had been broken into and that over ninety cartons of cigarettes had been stolen. The break-in was apparently achieved through a hole that had been made in the back wall of the building, which was a public bathroom that allowed no entry into the rest of the store. An additional hole had been made to gain admission to the actual store. Howard also noticed that a box of clear garbage bags had been moved to a location near one of the holes. Howard informed the Petal Police Department of the break-in. Thereafter, police officers came to the Fuelmart to investigate the scene and take photographs. Unfortunately, the photographs were accidentally erased and were not available at trial. No fingerprints or other identifying forensic evidence was recovered from the crime scene.
¶ 4. Around the same time as the report of the break-in and the investigation of the scene, Cridiso was stopped by Forrest County Deputy Sheriff David Klem, who had been informed of the break-in at the Fuelmart. Klem testified that he stopped Cridiso because he believed that the vehicle, which was coming out of a dead-end alley near the Fuelmart at around five-thirty in the morning, was suspicious. Klem also testified that he had previously seen switched tags on Cridiso's vehicle. After Cridiso was stopped, he was asked to get out of his car, which he did. At that time, Klem observed white powder on Cridiso's clothing. Cridiso's wife was also in the car and was also covered in white powder. When asked what he was doing out, Cridiso informed Klem that he was on his way to work. When Klem looked in the front seat of Cridiso's vehicle, he observed a claw hammer, maul, and flashlight between the driver's seat and the passenger's seat. The instruments were covered in what appeared to be the same white dust as Cridiso and his wife.
¶ 5. After making these observations, Klem contacted the Petal officers and informed them of his findings. After the Petal police officers arrived, they further examined what could be seen by looking into the car. Several cartons of cigarettes, in clear plastic bags, were observed underneath bags of clothing in the backseat of Cridiso's vehicle. Through empty audio holes in the rear of the car, officers were able to observe additional cigarette cartons located in the trunk of Cridiso's car. Some time after the Petal officers arrived, Cridiso and his wife were taken into custody.
¶ 6. Howard was brought to the vehicle to see if she could identify the cartons of cigarettes as the ones that had been taken from her store. She was able to positively identify several of the cartons because either she or another Fuelmart employee had handwritten the number "seven" on the cartons after receiving them. This was *285 a standard practice that the Fuelmart used to identify promotional cartons, which contain only seven packs of cigarettes as opposed to the ten packs that come in other cartons. Cridiso's vehicle was then taken to the Petal Police Department, where it was processed. A wrench was found in the car along with the objects observed by the deputy. Around ninety cartons of cigarettes were discovered in the vehicle.
¶ 7. Thereafter, Howard came to the Petal Police Department to attempt to identify the cartons that had been removed from the vehicle as the cartons that were stolen from her store. She was able to positively identify only the cartons that had "seven" handwritten on them, but she testified that the other cartons almost exactly matched the number and brand of cartons that had been taken from the store. At that time, the majority of the cartons were returned to her for sale at the Fuelmart. Before giving her the cartons, law enforcement photographed and inventoried the cartons. Testimony indicated that the cartons were returned to Howard in part because tobacco has a limited shelf-life, and the cigarettes would likely become unsaleable if kept until after Cridiso's trial. The cartons that Howard was able to identify positively as having come from the Fuelmart were kept for use at trial.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Indictment
¶ 8. In Mississippi, issues of law are reviewed de novo by appellate courts. Jones v. State, 912 So.2d 973, 975(¶ 8) (Miss.2005) (citing UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc., 525 So.2d 746, 754 (Miss.1987)). Because a determination of whether an amendment is one of form or one of substance is a question of law, a court's decision to allow the amendment of an indictment "deserves a relatively broad standard of review. . . ." Id. (citing Peterson v. State, 671 So.2d 647, 652 (Miss.1996)).
¶ 9. In general, a trial court can only grant amendments of form to an indictment, not amendments of substance. Mixon v. State, 921 So.2d 275, 280(¶ 15) (Miss.2005) (citing Shive v. State, 507 So.2d 898, 900 (Miss.1987)). Any amendment which "change[s] the charge made in the indictment to another crime" is an amendment of substance. Id. (quoting Shive, 507 So.2d at 900). Amendments of form are those that do not prejudice the defense. Jones, 912 So.2d at 976(¶ 9) (quoting Pool v. State, 764 So.2d 440, 443(¶ 10) (Miss.2000)). "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." Id. (quoting Pool, 764 So.2d at 443(¶ 10)). If a defect is found to be one of substance, the indictment can be corrected only by the grand jury, not by the trial court. Id. (citing Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994)).
¶ 10. In the present case, we find that the amendment granted by the trial court was an amendment of form and not an amendment of substance. The original indictment in the case alleged that Cridiso had burglarized a store in Hattiesburg, Mississippi. In reality, the store was located in Petal. Shortly before trial, Cridiso filed a motion to quash the indictment on the grounds that it "contains the wrong location of the crime alleged to have been committed in this cause thus creating a jurisdictional defect." Prior to trial, the court held a hearing on all the pre-trial motions, including the motion to quash the indictment. At the hearing, Cridiso reiterated that the city identified as the location *286 of the crime in the indictment was incorrect. The State responded, pointing out that "[t]here is no other Fuel Man 603." The State requested that the court allow the State to amend the indictment to reflect that the location in question was in Petal and not Hattiesburg. The court ruled, noting:
I believe the indictment does fairly and specifically set forth Fuel Man Number 603, 1014 South Main. Although it should have read Petal, Mississippi, I don't know that there even is a South Main in Hattiesburg, Mississippi; however, both are situated within the jurisdiction of this Court in Forrest County, Mississippi. I'm going to allow the amendment to show Petal, Mississippi. . . .
¶ 11. Mississippi Code Annotated section 99-17-13, as amended, specifically allows:
Whenever . . . there shall appear to be any variance between the statement in the indictment and the evidence offered in proof thereof, in the name of any . . . city, town, village, division, or any other place mentioned in such indictment . . . it shall and may be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense on the merits, to order such indictment and the record and the proceedings in the court to be amended according to the proof. . . .
Therefore, the court in this case was authorized to amend the indictment to change the location from Hattiesburg to Petal as long as the change was "not material" and Cridiso was not "prejudiced thereby in his defense on the merits. . . ."
¶ 12. There is no indication that Cridiso was confused as to the location of the alleged crime. No evidence was offered indicating that there was a similar location at 1014 South Main in Hattiesburg; in fact, no evidence was offered indicating that there even was a South Main in Hattiesburg at all. The only explanation offered to explain Cridiso's whereabouts at the time of the crime was the testimony of Klem, who testified that Cridiso said he was on his way to work. Nothing was presented to indicate that Cridiso had a defense prepared that was no longer available to him after the amendment of the indictment. Cridiso's defense was that he did not commit the burglary in question, as shown by his opening statement where his attorney told the jury: "we're here today because on March 31, 2003, the police arrested the wrong man." Clearly, Cridiso's defense that someone else committed the crime was as viable after the indictment as it had been before the amendment of the indictment. The court did not err in declining to quash the indictment and in granting the State's amendment to the indictment to reflect the proper location of the burglary.
¶ 13. Cridiso also contends that the evidence offered at trial still failed to conform to the indictment, because the location in question was a "Fuelmart," whereas the indictment alleged that the burglary took place at a "Fuel Man." We note first that, while Cridiso raised several grounds on which he believed that the indictment should be quashed, Cridiso did not raise this issue below as a flaw in the indictment. A flaw in an indictment that could have been cured with a non-substantive amendment that is raised for the first time on appeal is procedurally barred. Gray v. State, 728 So.2d 36, 70 (¶ 169) (Miss.1998) (citing Brandau v. State, 662 So.2d 1051, 1055 (Miss.1995)). The change of the specific name of the store from "Fuelman" to "Fuelmart" clearly would have been an amendment to the form of *287 the indictment, and thus would have been proper. See Parchman v. State, 279 So.2d 602, 603-04 (Miss.1973) (holding that amendment to indictment to reflect actual name of victim is allowable). Therefore, this issue is procedurally barred.
¶ 14. Regardless of the procedural bar, this issue is without merit. In Spicer v. State, 921 So.2d 292, 319(¶ 58) (Miss.2006) (citing Williams v. State, 445 So.2d 798, 804 (Miss.1984)), the Mississippi Supreme Court explained the purpose of an indictment: "The purpose of an indictment is to furnish the defendants notice and a reasonable description of the charges against them. . . . Therefore, an indictment is only required to have a clear and concise statement of the elements of the crime the defendant is charged with." The indictment in the present case gave a clear and concise statement of the elements of the crime with which Cridiso was charged. The indictment stated that Cridiso had "willfully, unlawfully, feloniously, and burglariously" broken and entered into a building at 1014 South Main "known as Fuelman # 603 . . . with the intent to steal therein." The fact that the building was actually known as "Fuelmart" is immaterial to Cridiso's understanding of the charges against him. In addition to requiring that the indictment contain a plain and concise statement of the essential facts of the crime, Rule 7.06 of the Mississippi Uniform Rules of Circuit and County Court also requires: (1) the name of the accused, (2) the date of the filing of the indictment, (3) language indicating that "prosecution is brought in the name and by the authority of the State of Mississippi," (4) "[t]he county and judicial district in which the indictment is brought," (5) the date and time of the offense, (6) the signature of the grand jury foreman, and (7) the words "against the peace and dignity of the state." This list does not require that an indictment specify the name of the victim at all. The indictment in this case, despite misspelling the name of the store where the burglary took place, was sufficient. Cridiso's contentions to the contrary are without merit.
2. Denial of Motion in Limine and Spoliation
¶ 15. Cridiso next contends that the court erred in failing to grant his motion in limine, which requested that the State be prohibited from introducing testimony about, and photographs of, the cigarette cartons that were returned to Howard prior to trial. Cridiso also contends that he is entitled to a new trial because of the State's spoliation of evidence that would have aided his defense. For clarity's sake, we address these two claims of error separately.
Spoliation
¶ 16. A defendant is entitled to a new trial because of lost or destroyed evidence only if the evidence "would have played a significant role in the defendant's case" and the defendant had "no way of obtaining comparable evidence by other means." Russell v. State, 849 So.2d 95, 114(¶ 58) (Miss.2003) (quoting Northup v. State, 793 So.2d 618, 623-24(¶ 17) (Miss. 2001)). "To play a significant role, the exculpatory nature and value of the evidence must have been apparent before the evidence was lost." Id. (quoting Northup, 793 So.2d at 623-24(¶ 17)). Intentional destruction of evidence raises an inference that material was exculpatory only when "the spoliation or destruction was intentional and indicate[d] fraud and a desire to suppress the truth." Murray v. State, 849 So.2d 1281, 1286(¶ 19) (Miss.2003) (quoting Tolbert v. State, 511 So.2d 1368, 1372 (Miss.1987)).
¶ 17. The court did not abuse its discretion by allowing the State to present testimony *288 about the missing cartons. Cridiso failed to show that the actual cartons themselves would have assisted in his defense. Although the evidence in this case was intentionally destroyed, no evidence whatsoever was produced to indicate that the destruction was fraudulent or stemmed from a desire to suppress the truth. Officer David Bassett, the officer who opted to return the cigarettes to Howard, explained:
The reason that I had released some of the cartons of cigarettes back to the store is simply because I knew exactly that the trial could go on up to a year in time; therefore, the cigarettes would have spoiled. They would have been no good. And due to that fact, I opted to give it back to the store, and I thought that pictures would definitely be suffice [sic] for the evidence that I did give back to the store, and I had Ms. Howard sign for each and every one.
Bassett also explained that the decision of whether to return stolen property is a decision that the officers must make with every burglary, and that, in this case, he had decided to give the cigarettes back to the store. The Russell court specifically stated that the inference that the material was exculpatory "does not arise where the destruction was a matter of routine with no fraudulent intent." Russell, 849 So.2d at 114(¶ 58) (citing Northup, 793 So.2d at 623-24(¶ 18)). Here, the destruction was a routine decision, made with no discernible fraudulent intent. Therefore, no inference arises that the material was exculpatory.
¶ 18. Cridiso claims that he "could have gotten serial numbers, bar codes or other characteristics off of the cartons which could have determined who the supplier was and whether they were actually from the Fuelmart." We note that, at trial, Cridiso claimed that "the only boxes of cigarettes that were recovered . . . that . . . Howard . . . could identify were those that were marked with the number seven. . . . The remaining boxes were identical in brand, make. They had no significant identifying characteristics on them whatsoever." It is unclear to this Court how the boxes could have "no significant identifying characteristics on them" and yet have "serial numbers, bar codes or other characteristics" that would have been useful to Cridiso in his defense. As this shows, Cridiso's position regarding the value of the cartons to his defense has been inconsistent. Furthermore, if Cridiso's contention was that there were bar codes or serial numbers on the cartons that could have been used to identify them, some evidence that there are distinct markings on cigarette cartons should have been presented. Nothing was presented other than argument to show that there are identifying characteristics on cigarette cartons that could have aided Cridiso in his defense.
¶ 19. The court did not err in allowing the State to present evidence regarding the destroyed cigarette cartons. The destruction of the cartons did not indicate any fraud or bad faith on the part of law enforcement, so no inference as to the exculpatory nature of the cartons was raised. Since Cridiso presented no evidence to show that whatever information that could have been found on the cartons would have been exculpatory or otherwise important in his defense, nothing indicates that the evidence was significant to Cridiso's defense, and his claim of error fails under the first prong of our spoliation analysis. Cridiso is not entitled to a new trial due to spoliation of evidence.
¶ 20. We also note that, because Cridiso was charged with burglary, the inclusion of evidence regarding the destroyed cartons of cigarettes could have no prejudicial impact on Cridiso. There is no doubt that *289 Cridiso was found with several cartons of cigarettes that were positively identified by Howard as having come from her store. Howard's testimony made it clear that Cridiso could not have purchased the cartons legally. Since burglary requires only a breaking and entering into a business with the intent to steal therein, the evidence would have been sufficient to sustain a conviction for burglary even without the admission of evidence regarding the returned cartons.[1]
Motion in Limine
¶ 21. We will reverse a court's denial of a motion in limine only if the court abused its discretion in denying the motion. Brawner v. State, 872 So.2d 1, 13(¶ 36) (Miss.2004) (citing McDowell v. State, 807 So.2d 413, 421 (Miss.2001)). There are two factors that must be present in order for a court to grant a motion in limine: "(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." Id. (citing McGilberry v. State, 797 So.2d 940, 942(¶ 12) (Miss.2001)). In seeking to limit the admission of the carton evidence, Cridiso alleged that the evidence would be inadmissible due to spoliation of evidence as well as Rules 401, 402, and 403 of the Mississippi Rules of Evidence.
¶ 22. Since we have already discussed why the spoliation of the evidence would not have been a sufficient ground for the court to grant the motion in limine, we now turn our attention to the rules cited by Cridiso.
¶ 23. Rule 401 of the Mississippi Rules of Evidence defines what evidence is relevant to an issue: "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 simply provides that irrelevant evidence is inadmissible, and relevant evidence is admissible unless otherwise prohibited. The cartons were clearly relevant to Cridiso's burglary of the store, because the primary items taken were the dozens of cartons of cigarettes. The presence of the cartons in Cridiso's vehicle certainly made it more probable than not that Cridiso had burglarized the Fuelmart. Therefore, Rules 401 and 402 do not provide any grounds for granting the motion in limine.
¶ 24. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Here, the evidence was highly probative of Cridiso's burglary of the Fuelmart and posed little risk of prejudice, confusion, delay, or the other factors cited in Rule 403. Therefore, Rule 403 did not provide a ground for granting the motion in limine.
¶ 25. Even if one of the above rules justified a granting of the motion in limine, Cridiso did not show that the mere introduction of the evidence would prejudice the jury in any way. Therefore, the trial court did not abuse its discretion in declining to grant Cridiso's motion in limine. *290 Cridiso's contentions to the contrary are without merit.
3. Weight and Sufficiency of the Evidence
Sufficiency of the Evidence
¶ 26. Evidence is sufficient to sustain a conviction where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). If "`reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient." Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). We will consider the record in "the light most favorable to the State." Id. at 843(¶ 17).
¶ 27. The evidence here is more than sufficient to sustain Cridiso's conviction. Although this case is built solely on circumstantial evidence, the evidence was still sufficient for a reasonable jury to find Cridiso guilty of burglary. First, Cridiso was found in the proximity of the Fuelmart. The impact of this circumstance is lessened by the fact that Cridiso lived in the area, but his proximity to the Fuelmart still lends credence to the jury's finding of guilt. Second, Cridiso was found near the Fuelmart shortly after the burglary was discovered. Third, both Cridiso and his wife were covered in white dust when they were stopped. Cridiso has pointed out that there was no analysis done to confirm whether the white dust was chemically the same as the dust found inside the Fuelmart, but several individuals testified that the white dust appeared to be identical to the dust found inside the store. These individuals did not represent themselves as experts in identifying white dust, and the jury was entitled to place whatever weight on their testimony it believed the testimony deserved. Fourth, tools that could have been used to break into the Fuelmart were found with Cridiso in the vehicle, covered in the same white dust as Cridiso and his wife. The analyst who examined the scene testified that, because of the nature of the material that the wall was made of, it would have been nearly impossible to find tool marks in the debris left in the store. Fifth, pieces of debris appearing to match the debris in the store were found in the plastic bags with the cartons of cigarettes in Cridiso's vehicle. Sixth, over ninety cartons of cigarettes were found in Cridiso's vehicle. These cartons matched nearly exactly the inventory taken from the Fuelmart. Seventh, the promotional cartons that the Fuelmart marked with "seven" were found intermingled with the other cartons recovered from Cridiso's vehicle. Eighth, Howard testified that, although she could not positively identify any of the cartons except those she had written "seven" on, the rest of the cartons displayed a green mark. According to Howard, this mark was put on the cartons by the distributor. She testified that the Fuelmart is the only store in Petal that has the green-marked cartons, although she admitted that there are other stores in other areas that also display green-marked cigarette cartons. Finally, the cartons were found in plastic bags that Howard testified were identical to the garbage bags in her store. She also testified that whoever broke into the store had moved the garbage bags from their normal location to a location in another part of the store, indicating that whoever took the merchandise had also possibly used the garbage bags. These facts, while all circumstantial, are more than sufficient together for a reasonable jury to have found Cridiso guilty.
*291 ¶ 28. Cridiso contends that the State did not prove that Cridiso "actually broke and entered the Fuelmart." Cridiso further contends that the State did not prove that "a person could enter the store through the hole in the concrete wall of the Fuelmart." As correctly noted by Cridiso, no measurements of the holes in the walls were taken, and the photographs of the holes were lost. However, testimony by numerous witnesses indicated that it was obvious that entry to the store was gained through the holes. This is supported by Cridiso's summary of the State's evidence in his brief, where he notes: "Entry was made to the Fuelmart by busting a hole in the back concrete wall of the store."
¶ 29. Cridiso argues that the evidence indicated at most that he was guilty of receiving stolen property. The circumstantial evidence of Cridiso's location when he was stopped, the tools in his car, the concrete found in the bags containing the cigarette cartons in his vehicle, and the dust observed on both Cridiso and his wife all indicate that Cridiso broke and entered into the Fuelmart. Quite simply, the evidence indicated that Cridiso was guilty of more than simply receiving stolen property.
¶ 30. Cridiso also contends in his brief that "the brands of cigarettes that Mrs. Howard testified were missing from the Fuelmart consisted of Salems, Newports, Marlboros, and Kools. But the brand names of the cartons of cigarettes that Detective Bassett gave to Mrs. Howard consisted of Doral, Benson and Hedges, Winstons, Salems, Newports, Marlboros, and Kools." What Cridiso does not mention is that this discrepancy was explained by Howard during the State's redirect of her testimony. Howard testified that she had initially thought that only Salems, Newports, Marlboros, and Kools were taken, but that was a mistake, and she later realized that "more than just those brand names" were missing. In other words, Howard's initial inventory of the missing cigarette brands was incorrect, but she later corrected the inventory. Her corrected inventory matched nearly exactly the cigarette cartons returned to her by Bassett. Cridiso also contends that Bassett lost three cartons of cigarettes before trial and was unable to explain their disappearance. However, Bassett indicated during his testimony that he was certain that what was bagged was the number of cartons that he kept, and that he may have incorrectly written down how many cartons he retained after returning the majority of the cartons to Howard. In other words, Bassett did attempt to explain the discrepancy between the number of cartons that were recorded and the number of cartons that were in evidence at trial.
¶ 31. Cridiso, citing Rawls v. State, 513 So.2d 942 (Miss.1987), contends that "proximity is insufficient to prove burglary." While Rawls does indicate that more than mere proximity is needed to sustain a conviction for burglary, proximity was the only incriminating evidence in Rawls: "Rawls' sole connection with the burglary was that he walked around the side of Dennis Perkins' house, shortly after two other men, who had carried several unidentified objects. The men then departed in an automobile, together. Though arousing suspicion, legal guilt, on these facts, remained unproven." Rawls, 513 So.2d at 944 (citing Shepherd v. State, 403 So.2d 1287, 1288 (Miss.1981)). There is significantly more evidence supporting Cridiso's conviction for burglary in this case.
¶ 32. In summary, the evidence was more than sufficient for a reasonable jury to find that Cridiso had committed all the elements of burglary. Although there was no direct forensic evidence, such as fingerprints or chemical analysis, to support the *292 conviction, the circumstantial evidence was more than sufficient for a reasonable jury to find that Cridiso was guilty of burglary. The evidence indicated that Cridiso broke into and entered the Fuelmart, a store that has valuable merchandise, with the intent to steal items therein, namely over ninety cartons of cigarettes. Cridiso's contentions that the evidence is insufficient to sustain his conviction are without merit.
Weight of the Evidence
¶ 33. We will reverse a conviction for being against the overwhelming weight of the evidence only when allowing the conviction to stand "would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss. 1997)). The Bush court stated that "the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)). When reviewing the record, we view evidence "in the light most favorable to the verdict." Id. (citing Herring, 691 So.2d at 957).
¶ 34. Viewing the evidence in the light most favorable to the verdict, Cridiso's conviction is not against the overwhelming weight of the evidence. Cridiso did not testify, nor did he present any witnesses in his defense. We have already found that the evidence was sufficient to support Cridiso's conviction. For the same reasons, we find that allowing his conviction to stand does not sanction an unconscionable injustice. The conviction is not against the overwhelming weight of the evidence. Cridiso's arguments to the contrary are without merit.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF BURGLARY AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A NON-VIOLENT HABITUAL OFFENDER, WITH SAID SENTENCE TO BE SERVED WITHOUT THE BENEFIT OF PROBATION, PAROLE, OR ANY FORM OF EARLY RELEASE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] In order for a conviction of business burglary, the Mississippi Code requires: "breaking and entering . . . any shop, store . . . or other building . . . in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony. . . ." Miss.Code Ann. § 97-17-33(1) (Supp.2005) (emphasis added).