945 So.2d 429 (2006)
Virginia GESKE, Individually, and as Administratrix of the Estate of Jerald J. Geske, Deceased, Appellant
v.
Danny R. WILLIAMSON, Appellee.
No. 2004-CA-01730-COA.
Court of Appeals of Mississippi.
December 12, 2006.
*430 Larry O. Norris, John D. Smallwood, Hattiesburg, attorneys for appellant.
Lara A. Coleman, David A. Barfield, Jackson, attorneys for appellee.
Before MYERS, P.J., GRIFFIS, and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Virginia Geske appeals the Circuit Court of Covington County's judgment for defendant Danny R. Williamson, after a jury returned a verdict in his favor. Geske argues that the circuit court erred in allowing Williamson to admit evidence at trial regarding the Geskes's collateral sources of recovery and testimony of related pending litigation. We find no error and affirm the circuit court decision.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Prior to 2001, Jerald Geske was employed by Mike Barnes Trucking Company (MBTC). While employed there, Jerald was diagnosed with mesothelioma, a cancer of the lining of the lungs, usually caused by exposure to asbestos. Because of his illness, Jerald became unable to work, but maintained his health insurance at MBTC for himself and his wife through COBRA payments.
¶ 3. In January 2001, Danny Williamson, a Mississippi-licensed insurance agent who sold group insurance policies in the area, made a sales call to MBTC to inquire about the status of its group health insurance. Mike Barnes, the owner of MBTC, told Williamson he had recently decided he was going to drop his company's current group health insurance policy because it was becoming too expensive, but he was undecided as to whether he would replace it. Barnes decided to obtain quotes from Williamson on individual policies for his employees.
¶ 4. Thereafter, Barnes advised Williamson that he had a former employee, Jerald Geske, who had health insurance on his policy through COBRA payments. Barnes inquired what he could do to help the Geskes obtain health insurance, since he was terminating the company's group policy. Barnes was aware that because of Jerald's mesothelioma, Jerald had been receiving *431 numerous medical services.[1] Williamson testified that he was under the assumption that Barnes was cancelling his group health insurance, and thus COBRA would no longer cover the Geskes. Williamson advised Barnes that he thought the only coverage for the Geskes would be the Mississippi Assigned Risk Pool (Risk Pool).[2]
¶ 5. Around March to April 2001, Williamson, at Barnes's request, asked him to bring a Risk Pool brochure and application to a meeting Barnes had arranged with the Geskes to explain that he was terminating the company's group health insurance and to answer any questions the Geskes may have. During this meeting, Barnes explained to the Geskes that they could apply to the Risk Pool, and it would provide health insurance for them.
¶ 6. Soon after, Williamson asked Barnes if, while he was quoting individual policy rates for MBTC employees, he could submit an application to United Healthcare (UHC) for a group health insurance policy for MBTC. Barnes allowed Williamson to submit an application for group health insurance to UHC, but stated he would not necessarily accept it. At this time Barnes also decided against individual health insurance policies for his employees because of the expense.
¶ 7. Before submitting the UHC health insurance application, Williamson called UHC and specifically asked if a former employee in Jerald's situation, making COBRA payments, would be eligible for the new health insurance policy under UHC. The UHC representative replied negatively, since the new policy would not be considered a replacement policy, under the assumption that MBTC's old policy had already been terminated.
¶ 8. On April 12, 2001, Williamson submitted the MBTC group health insurance application to UHC. The UHC application, completed by MBTC, did not include coverage for people with serious lung diseases, nor did it state that any former employees were currently under COBRA coverage. At trial, Williamson maintained that he was under the impression all of the information on the application was correct, because he believed at this time that Barnes had cancelled his former insurance policy and that the Geskes were in the process of applying for the Risk Pool insurance. UHC ultimately approved MBTC's application. Barnes agreed to the terms of the application and the company started group health insurance coverage with UHC on June 15, 2001.
¶ 9. Also in June, MBTC called Williamson and asked if he would meet with the Geskes again and pick up their completed Risk Pool insurance application. On or about June 14, 2001, Barnes, Williamson, Mr. and Mrs. Geske, and the Geskes's daughter, Virginia Anderson, met at MBTC. Williamson picked up the Geskes's Risk Pool application, along with a check for the first premium. One application question which Williamson was to complete as the agent asked when prior health insurance coverage had been terminated, and because Williamson did not know the answer, he called Barnes. Barnes told him the former policy had been terminated May 15, 2001.[3]
*432 ¶ 10. The Risk Pool received the Geskes's application on July 16, 2001. The Risk Pool then contacted Williamson requesting written documentation of the termination of MBTC's prior coverage and asking whether a replacement policy was obtained. Barnes, under Williamson's advice, wrote a letter dated August 7, 2001 to the Risk Pool stating that "[o]ur group insurance . . . terminated on May 15th, 2001, and there was no replacement policy obtained." The Geskes contended that Williamson lied in this statement, because the Geskes considered the UHC policy as directly replacing the former policy. Williamson maintained that he and Barnes were truthful because the UHC policy did not directly replace the former policy, since there was about a thirty-day gap in coverage.[4]
¶ 11. While the Geskes's insurance application was being considered by the Risk Pool, their daughter, Virginia Anderson, ran into some MBTC employees at a local pharmacy. She found out from them that MBTC possibly had a new group health insurance policy. She called the Risk Pool and informed them of this. She also made a call to a benefits advisor with the U.S. Department of Labor. Soon after, a representative from the Risk Pool, Ronda Winston, wrote Anderson a letter dated September 6, 2001, stating that the Geskes would not be eligible for Risk Pool insurance, as Jerald would be eligible for COBRA under MBTC's new group policy. Williamson testified at trial that he received a copy of this letter too, as submitting agent, so he called Winston to find out what had occurred. He stated Winston implied that the Geskes had withdrawn their Risk Pool application. Thus, Williamson called Anderson, advising her not to withdraw her parents' Risk Pool application until "we get this all handled" by either obtaining coverage from the Risk Pool or UHC. Otherwise, the Geskes would be without health insurance coverage. Anderson, on her parents' behalf, did not follow this advice.
¶ 12. On September 5, 2001, in response to Anderson's call to the Labor Department, Williamson received a letter from them advising him that because of certain IRS provisions pertaining to ERISA, Jerald Geske may be eligible for UHC coverage. Williamson faxed this information to a manager at UHC, since they had told him originally that the Geskes would not be covered because of the gap in coverage from the prior carrier. Williamson testified that he and the manager agreed that, due to the Department of Labor's opinion, the Geskes should submit an application to UHC under MBTC's group policy.
¶ 13. The Geskes complied and filled out a UHC application. Williamson submitted it on September 10, 2001. However, ten days later, on September 20, 2001, the Geskes sued Williamson, UHC, and MBTC in Covington County Circuit Court for unlawfully terminating the Geskes's health insurance benefits and not properly replacing them. This action halted UHC's underwriting process. Moreover, on September 30, 2001, Jerald Geske died of mesothelioma. During the course of the litigation, seventeen months after the lawsuit was filed on February 7, 2003, UHC approved the Geskes's health insurance coverage through MBTC's group plan, with the effective date of June 15, 2001. Further, UHC advised Virginia Geske to submit any claims that she and her late husband may have had for payment from *433 that time forward. Even so, she never submitted any claims to UHC.
¶ 14. At the time of Jerald's death, the Geskes had medical expenses totaling approximately $30,000. At trial, the Geskes's adult children testified that in the months preceding their father's death, Jerald had declined vital medical services such as a CT scan, home health care, and pain management because of his lack of insurance and inability to pay for these services. However, by this time, the Geskes had received approximately $20,000 in settlement from an asbestos company for Jerald's mesothelioma. At trial, there was no explanation by the Geskes as to why this money was not used for Jerald's medical services.
¶ 15. In their complaint, the Geskes made numerous claims from negligence to fraudulent misrepresentation. They contended that Williamson colluded with MBTC to falsely represent to the Geskes that MBTC was cancelling its group policy, thus the only policy available to the Geskes was through the Risk Pool. The Geskes also contended that Williamson conspired with MBTC to "get rid" of the Geskes so that MBTC could switch to UHC's less expensive group insurance. At trial, during closing arguments, Geske's counsel asked the jury to return a verdict for $762,500 in damages for the mental anguish and emotional distress incurred by the Geskes for financial worry because of this health insurance debacle, in addition to the $30,000 in medical bills.
¶ 16. On October 25, 2001, the defendants removed this case to federal court. The district judge retained the case against defendants MBTC and UHC in federal court, but remanded that part of the case dealing with Williamson. On July 22, 2004, days before trial, Geske filed two motions in limine pertaining to this appeal. One motion sought to preclude admission of evidence of the Geskes's collateral sources of recovery, specifically the $20,000 in asbestos settlement proceeds, and the other attempted to prevent admission of testimony regarding the lawsuit against MBTC and UHC in federal court. Since these motions were made so close to trial, Williamson could not respond; however, the motions were heard in the judge's chambers before trial. The judge determined that the evidence identified in these two motions had "probative value" and was thus admissible. The trial court did not, however, identify the "probative value," and there is no transcript of this proceeding as no court reporter was present. A two-day jury trial commenced in Covington County Circuit Court on July 26, 2004. The jury found for defendant Williamson.[5] Aggrieved, Virginia Geske filed this appeal.

STANDARD OF REVIEW
¶ 17. Abuse of discretion by the trial judge is the standard of review for admission or exclusion of evidence. Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997). This Court will not reverse the trial court's decisions on the admission or exclusion of evidence unless the error violates a party's substantial rights. Richardson ex rel. Richardson v. DeRouen, 920 So.2d 1044, 1048-49(¶ 10) (Miss.Ct.App.2006). This Court must find that the circuit court abused its discretion in order to reverse. Id. at 1049.

*434 ISSUES AND ANALYSIS
I. Whether the trial court committed reversible error in admitting evidence of collateral sources of recovery.
¶ 18. The collateral source rule is well established in Mississippi. Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611, 618(¶ 23) (Miss.2001). A tortfeasor cannot introduce evidence of a plaintiff's collateral sources of recovery in order to mitigate damages. Busick v. St. John, 856 So.2d 304, 309(¶ 14) (Miss.2003). However, the collateral source rule applies only when the compensation is for the same injury for which the damages at issue are sought. Baugh v. Alexander, 767 So.2d 269, 272(¶ 11) (Miss.Ct.App.2000). Further, if evidence is introduced for a purpose other than to mitigate damages, the collateral source rule is not violated and the evidence may be admitted. Burr v. Miss. Baptist Med. Ctr., 909 So.2d 721, 729(¶ 26) (Miss.2005).
¶ 19. Virginia Geske argues that because Williamson's counsel introduced evidence of Jerald Geske's mesothelioma settlement throughout the trial, the collateral source rule was violated and thus the trial court judge committed reversible error in allowing this testimony. Virginia Geske contends that allowing Williamson's counsel to introduce evidence of the asbestos settlement made the case about Jerald's mesothelioma, instead of the insurance issues. Virginia Geske concludes that this evidence thus prejudiced her case and denied her a fair trial.
¶ 20. The collateral source rule applies only when the compensation received is for the same injury as the current damages being sought. Baugh, 767 So.2d at 272(¶ 11). In Baugh, which involved an automobile accident, a motion in limine was filed by the plaintiffs to exclude evidence of health insurance and workers' compensation benefits which the plaintiff had been receiving for a previous and distinct injury from the accident. Id. at 272(¶ 10). There, this Court found the trial court did not err in denying the motion because the compensation was received for a different injury than those of the case under consideration, and thus the collateral source rule was inapplicable. Id. at 272(¶ 11).
¶ 21. Virginia Geske cites three cases in her brief for the proposition that when the collateral source rule is violated, the admission of evidence is reversible error: McCary v. Caperton, 601 So.2d 866 (Miss.1992); Cent. Bank of Miss. v. Butler, 517 So.2d 507 (Miss.1987); and Preferred Risk Mut. Ins. Co. v. Courtney, 393 So.2d 1328 (Miss.1981). These three cases are distinguishable from the instant case in that in the cited cases the sources of compensation are all for the same injury. However, in this case, the compensation at issue was for the injury of Jerald's mesothelioma due to asbestos exposure, and not for the damages caused by the alleged unlawful termination of insurance benefits. Since this source of damages is derived from separate and distinct alleged torts, the collateral source rule is inapplicable.
¶ 22. Further, not admitting evidence of the Geskes's financial situation would be unfairly prejudicial to the defendant Williamson. Throughout the trial, Geske's counsel and witnesses made numerous reference to their dire financial situation because of the lack of financial means to pay for necessary medical services for Jerald. At one point, the Geskes's son, under direct examination, suggested to the jury that Jerald might have had a different outcome if he had had a CT scan which "he was denied . . . because he did not have insurance." It follows that because of the supposed dire *435 financial situation and the lack of health insurance, this situation caused the emotional distress damages sought by the Geskes. Thus, it was incumbent on the defense counsel to show the jury that the Geskes could actually afford these medical procedures, even without insurance. Therefore, the evidence that the Geskes had received asbestos settlement proceeds was relevant to the issue of whether the Geskes suffered emotional distress as a result of the lack of insurance coverage, and necessitated by Geske's own testimony at trial.
¶ 23. Finally, the collateral source rule applies only when evidence of other compensation is used for the purpose of mitigating damages. Busick, 856 So.2d at 309(¶ 14). If the evidence is used for a purpose other than to lessen damages, the collateral source rule is not violated. Id. at 310(¶ 16). Williamson argues that he did not use the evidence of the mesothelioma settlement money to lessen the damages claimed by the Geskes. Instead, Williamson argues that the evidence was used to rebut or impeach[6] Geske's witnesses' testimony about their inability to pay for medical services because of their lack of money. We agree that the evidence of the mesothelioma settlement was not used to mitigate the damages caused to the Geskes, but was used to prove that the emotional damages did not, in fact, occur. Thus, the evidence was properly admitted.
II. Whether the trial court committed reversible error in admitting testimony about the related case pending in federal court.
¶ 24. Virginia Geske filed a motion in limine, which was denied by the circuit court judge, seeking to exclude testimony about the pending case in federal court. The Geskes originally filed suit in circuit court against three defendants: Williamson, UHC, and MBTC. After removal of the case to federal court, the claims against UHC and MBTC remained there, while the district judge remanded Williamson's portion of the case. Virginia Geske now argues, however, that "all improper acts and omissions were done by one person, Williamson," who was acting on behalf of MBTC and UHC as their agent/employee.
¶ 25. As Williamson points out, the Geskes's original complaint alleges that Williamson colluded with MBTC by misrepresenting that MBTC was canceling its group policy and thus the Geskes could only obtain insurance through the Risk Pool. Further, the complaint states that Williamson conspired with MBTC to have the Geskes insured through the Risk Pool and not the new UHC policy, so MBTC's group insurance would be less expensive. Evidence that the Geskes were proceeding in federal court with the same claims as here would be relevant to the defense of Williamson. Allowing the jurors to think that the only recourse available to the Geskes was through the state court lawsuit would prejudice the defense. Also, the theory of their case is based on collusion and conspiracy with MBTC and UHC, so allowing the jury to think this was the only case misrepresents the situation. Representatives of MBTC and UHC testified at trial and the fact that those companies were involved in related litigation was relevant for the jury to determine whether there was bias against Williamson. Additionally, *436 during the trial it was necessary for the defense to explain to the jury that the seventeen month delay regarding the Geskes's health insurance approval by UHC was due to the lawsuit being filed ten days after the application for insurance was received. This omission would unfairly prejudice the defense if not explained to the jury. Accordingly, we cannot find that the trial court abused its discretion in admitting testimony concerning the pending federal court case.
III. Whether there was cumulative error which prejudiced Virginia Geske, denying her a fair trial.
¶ 26. Virginia Geske argues that if this Court cannot find reversible error in the above two issues, then there is cumulative error regarding the admission of this evidence throughout the trial. Geske claims the cumulative effect of these errors deprived her of a fair trial because of the evidence's highly prejudicial nature. This Court maintains that there was no error in the denial of Geske's two motions in limine and there was no abuse of discretion by the trial judge; thus, there was no cumulative error. Consequently, we find no merit to this issue.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF COVINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Also at this time, Jerald had a pending lawsuit against asbestos manufacturers for damages resulting from his mesothelioma.
[2] The Assigned Risk Pool was established in Mississippi for people who cannot obtain insurance elsewhere. Miss.Code Ann. § 83-9-203 (Rev.1999).
[3] MBTC terminated its former health insurance policy by nonpayment of premiums, and MBTC had only paid the premium through May 15, 2001.
[4] All of MBTC's employees had an approximate thirty-day gap in health insurance coverage.
[5] On August 24, 2004, the federal case against MBTC and UHC was dismissed with prejudice.
[6] We note that the Mississippi Supreme Court has not allowed evidence of collateral sources introduced for impeachment purposes. See Busick, 856 So.2d at 309(¶ 15) (stating that there is no impeachment exception to collateral source rule recognized in Mississippi but allowing in testimony of collateral source, with limiting instruction, because testimony was not solicited for purposes of mitigating loss or reducing damages).