963 So.2d 1255 (2007)
Melvin RANKIN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00279-COA.
Court of Appeals of Mississippi.
August 28, 2007.
*1256 Leslie D. Roussell, Laurel, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before LEE, P.J., BARNES and CARLTON, JJ.
BARNES, J., for the Court.
¶ 1. Melvin Rankin was found guilty of statutory rape by a jury in the Circuit Court of Wayne County and sentenced to twenty years in the custody of the Mississippi Department of Corrections. He appeals and raises the following issues:
I. The trial court committed reversible error by allowing testimony regarding *1257 a letter purported to be written by Melvin Rankin to [C.E.'s mother]. The letter was more prejudicial than probative and its introduction also violated the rules of discovery and hearsay.
II. The trial court committed reversible error by failing to allow the defendant to question the mother of [C.E.] regarding her motive for falsely testifying in this case.
III. The introduction of the DNA evidence in this case and the testimony regarding it allowed the jury to convict a man on evidence that by its very nature equaled reasonable doubt per se.
IV. The statutory rape indictment in this case required the State to prove that the victim was under fourteen years of age and that the defendant was at least twenty-four months older than the victim. The State failed to introduce any sufficient evidence about age and this conviction should be reversed and this case remanded for a new trial.
V. The cumulative effect of all the errors committed required reversal and/or a new trial.
This Court finds no error and affirms the judgment and sentence.

FACTS
¶ 2. C.E.[1] lived part-time with her mother and part-time with her father and other relatives. Her parents never married. On Saturday night August 16, 2004, C.E. spent the night with relatives and was dropped off the following morning at her mother's apartment complex in Waynesboro, Mississippi. Her mother was at church, and C.E. was left alone in the apartment with Melvin Rankin, who was her mother's live-in boyfriend.
¶ 3. According to her testimony, C.E. was sitting on her bed in her room when Rankin came up behind her, pushed her down on the bed, and had intercourse with her. C.E. thereafter left the apartment and told her cousin what had happened. Another relative called the police to report the incident. According to testimony, at the time of this incident, Rankin was thirty-six years old and C.E. had just turned twelve years old.
¶ 4. Rankin testified that when C.E. came home Sunday morning, he told her that her mother was at church and that she should go to her grandmother's house. According to Rankin, C.E. became belligerent and threw a tantrum because she wanted to stay home. Rankin contends that C.E. left the apartment, and he also left to help one of his relatives wash clothes.
¶ 5. The police were called, and a report was made that Melvin Rankin had raped C.E. A rape kit was performed on C.E. at the local hospital. Once he heard that the police were looking for him, Rankin voluntarily went to the police station and then to the hospital for testing. Evidence from the rape kit and from Rankin's test were submitted to the Mississippi Crime Lab for comparison testing. At trial, Huma Nasir from Reliagenme Technology could not testify that the blood from Melvin Rankin matched the DNA found inside C.E. What Ms. Nasir could testify to was that 91.5% of other African Americans were excluded as the DNA donor, 98.9% of Caucasians were excluded, and 97.6% of *1258 Hispanics were excluded. In other words, Rankin was a possible source of the DNA.
¶ 6. At trial, C.E.'s mother testified that she had received a letter from Rankin while he was in jail stating that "the devil made him fall weak." In the letter he also told the mother that he loved and missed her. C.E.'s mother testified that she threw away the letter. Prison records verified that Rankin had sent letters to C.E.'s mother. Rankin testified at trial that he had sent her letters, but denied admitting to the rape or having written that "the devil made him fall weak."
¶ 7. The jury returned a verdict of guilty of statutory rape against Melvin Rankin, pursuant to Mississippi Code Annotated section 97-3-65(1)(b) (Rev.2006). The court sentenced him to a term of twenty years in the custody of the Mississippi Department of Corrections.

STANDARD OF REVIEW
¶ 8. The standard of review for the admission or exclusion of evidence is an abuse of discretion. Chandler v. State, 946 So.2d 355, 364(¶ 41) (Miss.2006) (citing Shaw v. State, 915 So.2d 442, 445(¶ 8) (Miss.2005)). "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." Fisher v. State, 690 So.2d 268, 274 (Miss.1996).

DISCUSSION
I. Admission of Testimony Regarding the Letter From Rankin.
¶ 9. Rankin argues the trial court committed reversible error in allowing testimony regarding a letter written by Rankin to C.E.'s mother while he was incarcerated. He claims the letter was inadmissible hearsay, violates the Confrontation Clause, is more prejudicial than probative, and violates the rules of discovery.
¶ 10. At trial, investigating Officer Owen and C.E.'s mother were allowed to testify about the letter at issue. Officer Owen, over the objection of defense counsel, was allowed to testify as to its existence, and C.E.'s mother was allowed to testify as to its contents. Specifically, Officer Owen stated he had knowledge of a letter written to C.E.'s mother while Rankin was in jail. C.E.'s mother testified that she read the letter and threw it away. She testified that Rankin wrote "that the devil made him fall weak." As to the tone of the letter, she testified that "[h]e was telling me how much he loved me and miss[ed] me." Rankin admitted that he wrote letters to C.E.'s mother while incarcerated but denied they contained any admission to the rape.
¶ 11. Rankin argues that under Rule 804(b)(3), statements against interest are an exception to hearsay and only admissible if the declarant is unavailable. A declarant is "unavailable" where the declarant "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means. . . ." M.R.E. 804(a)(5). Rankin cites Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) for the proposition that the Sixth Amendment's Confrontation Clause bars out-of-court statements by witnesses that are testimonial and used to prove the truth of the matter asserted (hearsay), unless the witnesses are unavailable and the defendant has the opportunity to cross-examine them. Id. at 53-54, 124 S.Ct. 1354. Rankin contends that *1259 in our case he was available to testify about what he had written in this letter and was thus not an unavailable declarant under Rule 803(b)(3). Therefore, he argues, the letter and its contents would not be an exception to hearsay and would be inadmissible. However, under Crawford, Rankin has not explained how a letter can be testimonial in nature.
¶ 12. Rankin also cites Brooks v. State, 903 So.2d 691 (Miss.2005) in support of his argument. In Brooks, a witness testified that the defendant's mother told her the defendant confessed to the crime. Id. at 697(¶ 20). In the double hearsay situation of Brooks, the supreme court found the trial judge abused his discretion in allowing the testimony under the excited utterance exception to hearsay. Id. at 698(¶ 22). Rankin claims in Brooks that court also rejected the testimony as a statement against interest.
¶ 13. The rules of hearsay are wellknown. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). "Hearsay is not admissible except as provided by law." M.R.E. 802.
¶ 14. In allowing testimony about the letter, the trial court found that the letter was an exception to hearsay as a statement against interest that could be written or verbal. Rule 804(b)(3) states an exception to hearsay, if the declarant is unavailable, is "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or . . . tended to subject him to civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."
¶ 15. We agree with the trial court that testimony about the letter and its content are admissible, but we do not find this testimony an exception to hearsay. Instead, we find the testimony an admission by a party-opponent, not considered hearsay and thus admissible under Rule 801(d)(2). Under this rule, the statement is offered against a party and is the party's own statement. M.R.E. 801(d)(2)(A). Whether the declarant is available to testify is immaterial. Further, there can be no violation of the Confrontation Clause when the defendant is the person making the incriminating statement, as the defendant cannot cross-examine himself. Moreover, Brooks is distinguishable in that there, the supreme court dealt only with one part of the double hearsaythe witness's testimony of the mother's statement to her regarding the confessionand not with the confession of the defendant himself. Brooks, 903 So.2d at 697(¶ 21). The State argued that the defendant's confession to his mother was admissible either as a statement against interest under M.R.E. 804(b)(3) or as an excited utterance under M.R.E. 803(2). Id. The supreme court did not disallow the testimony as a statement against interest but instead found the confession could not be admitted under an excited utterance exception because too long a time period had elapsed since the incident. Id. at 698(¶ 22). However, the Brooks court found the testimony might be admissible under the "catch-all" provision of Rule 803(24) and recommended it proffered on retrial. Brooks, 903 So.2d at 698-99 (¶¶ 24, 27).
¶ 16. In our case, the testimony by C.E.'s mother concerning the letter was ambiguous, as defense counsel noted at trial. There was nothing in the testimony about the letter which was an absolute admission of guilt on the part of Rankin. Rankin was allowed to testify as to why he wrote the letters to C.E.'s mother. However, *1260 he testified he did not admit to raping C.E. in a letter. The jury was allowed to draw its own conclusions as to the meaning of this letter and others that were written to the mother while Rankin was incarcerated.
¶ 17. Rankin also argues two other points regarding this evidence. First, he notes the letter was not provided in discovery and therefore it should have been excluded. However, the State admitted and C.E.'s mother testified that the letter was thrown away by C.E.'s mother upon receipt and therefore could not be produced. We find no evidence in the record that Rankin's defense counsel accused the State of a discovery violation before trial. The trial court found Officer Owen's testimony that the letter existed sufficient. We agree and find no error.
¶ 18. Second, Rankin argues the admission of the letter and the testimony that he wrote "the devil made me fall weak" is more prejudicial than probative. Rankin's counsel argued outside of the jury's presence that the admission of the letter's existence would be highly prejudicial to Rankin. However, the trial judge disagreed and admitted the testimony from Officer Owen as to its existence. Later, when C.E.'s mother was testifying as to the content of the letter, Rankin's counsel did not renew his objection to the testimony. Accordingly, we find no error in the trial court's admission of either testimony on the existence of the letter or its contents. This issue is without merit.
II. The Mother's Motive for Testifying Against Rankin.
¶ 19. At trial, defense counsel attempted to question C.E.'s mother regarding what the Mississippi Department of Human Services ("DHS") had informed her DHS would do if she allowed Rankin back into her home. The State objected to this testimony, and the court sustained the objection. A proffer was made wherein C.E.'s mother testified that DHS would take C.E. away if the mother allowed Rankin back in her home.
¶ 20. The court determined that the proposed testimony was irrelevant and refused to allow the defense to ask these questions in front of the jury. On appeal, Rankin contends that this line of questioning was an attempt to show the mother's motive in testifying against Rankin. Rankin argues that he would have been able to compare her in-court statements with the statements the mother initially made to the effect that she did not believe this crime was committed by Rankin. He also argues that defendants are granted a broad right to question prosecutorial witnesses regarding their possible motives and biases that might bear upon the worth of their testimony. See Cook v. State, 728 So.2d 117, 120(¶ 4) (Miss.Ct.App.1998).
¶ 21. In support of its argument, the State cites Eason v. State, 916 So.2d 557, 562-63(¶ 27) (Miss.Ct.App.2005):
"A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence." Farmer v. State, 770 So.2d 953, 958(¶ 15) (Miss.2000). "The scope of cross-examination, though ordinarily broad, is within the sound discretion of the trial court and the trial court possesses inherent power to limit cross-examination to relevant matters." Smith v. State, 733 So.2d 793(¶ 37) (Miss.1999). "Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." Farmer v. State, 770 So.2d 953, 958(¶ 15) (Miss.2000).
*1261 ¶ 22. We agree with the trial court's conclusion that the testimony regarding DHS was irrelevant. The proffer indicated that DHS would take C.E. away if her mother allowed Rankin back into her house; DHS did not threaten to take C.E. away if the mother did not testify in a manner designed to secure his conviction. Further, the cross-examination did include questions as to whether the mother initially believed that Rankin committed the crime. The defense was not prevented from questioning the mother as to her beliefs and motives concerning Rankin. Therefore, we do not find the trial court abused its discretion in limiting questioning regarding DHS's comments to C.E.'s mother. This issue is without merit.
III. Admission of the DNA Evidence.
¶ 23. At trial, DNA expert Huma Nasir testified for the State that she performed DNA analysis of vulvar and vaginal swabs from C.E. and compared them to blood samples from Rankin. Nasir concluded that 91.5% of other African Americans were excluded as the donor of the DNA cells found in the swabs.
¶ 24. Rankin argues that the trial court erred in admitting evidence of the DNA testing. Specifically, he argues that the 91.5% result did not meet the burden of beyond a reasonable doubt. Rankin claims that 91.5% would not meet the presumption of paternity under Mississippi Code Annotated section 93-9-27 (Rev.2004), and, therefore, the evidence should have been excluded at trial.
¶ 25. Evidence is admissible if it is relevant. M.R.E. 402, 403. "`Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Additionally, "[t]he standard of review for the admission of or refusal to admit evidence is well-settled: admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." Peters v. State, 920 So.2d 1050, 1055(¶12) (Miss.Ct.App.2006) (quoting Jones v. State, 912 So.2d 501, 504(¶6) (Miss.Ct.App.2005)).
¶ 26. The standard for admission of evidence, as the State points out, is not that it must be statistically beyond a reasonable doubt, but whether the evidence is relevant. In our case, Nasir was admitted as an expert in the field of molecular biology, forensic DNA analysis and DNA hair analysis. She was allowed to testify as to the results of her DNA analysis without a specific objection from the defense. The specific arguments made by Rankin on appeal were not presented to the trial court. Further, Mississippi Code Annotated section 93-9-27, regarding the presumption of paternity genetic tests, does not provide the standard for admission of DNA evidence here. We find the trial court did not abuse its discretion in allowing in the statistical results of the DNA tests. This argument is without merit.
IV. Proof of Age.
¶ 27. Rankin argues that the State failed to introduce any documentary evidence, such as a birth certificate or other record, to prove the victim's age beyond a reasonable doubt. As Rankin states in his brief, C.E., her mother, her cousin and a police officer all testified that C.E. was twelve years old at the time of the incident.
¶ 28. Rankin also duly notes this Court has previously ruled against the Appellant *1262 on this issue. "Age . . . may be adequately proven by testimony." Wright v. State, 856 So.2d 341, 344(¶9) (Miss.Ct.App.2003) (citing Taylor v. State, 744 So.2d 306, 319(¶54) (Miss.Ct.App.1999)). This rule has not changed. The State is not required to provide a birth certificate or other documentation to show age, particularly where, as here, the victim and her mother both clearly state her date of birth and age at the time of the incident. This issue is without merit.
V. Cumulative Error.
¶ 29. This Court has recognized that several errors not individually sufficient to warrant a new trial can require reversal when taken together. Stringer v. State, 500 So.2d 928, 946 (Miss.1986). That rule is not applicable here. We have found no error in any of the issues Rankin has raised; therefore, there can be no cumulative error. This issue is without merit.
¶ 30. Having found no error, the Court affirms the judgment and sentence.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.
NOTES
[1] Initials are used for the victim's name to help preserve her privacy.