29 So.3d 109 (2010)
Marcy WRIGHT, Appellant
v.
ROYAL CARPET SERVICES, Appellee.
No. 2007-CA-01668-COA.
Court of Appeals of Mississippi.
February 23, 2010.
*111 Jim Waide, Tupelo, attorney for appellant.
B. Wayne Williams, Paul Nathan Jenkins, Jr., Tupelo, attorneys for appellee.
EN BANC.
ROBERTS, J., for the Court:
¶ 1. On February 13, 2004, Marcy Wright filed suit against seven defendants on a variety of claims related to the cleanup of her home after a pipe ruptured leaving water throughout her home.[1] On March 26, 2004, the case was removed to federal court. After nearly two years of litigation, Wright reached a settlement with the insurance defendants, so the matter was remanded to the Circuit Court of Lowndes County on March 12, 2006, leaving only the resident defendants, Royal Carpet and Service Pro South. A jury trial was held on August 21, 2007, and the jury returned a verdict in favor of Royal Carpet. Judgment was entered by the circuit court in favor of Royal Carpet on September 24, 2007. Aggrieved, Wright appeals and argues that the trial judge committed reversible error by denying her motion in limine to exclude evidence of her *112 homeowner's insurance. Finding no error, we affirm.

FACTS
¶ 2. Upon returning home on Sunday, October 7, 2001, Wright discovered an inch or so of water throughout her home, originating from a bathroom pipe that had burst the night before. Wright spent most of the day removing the water, furniture, and carpet from her home. Wright began contacting water-removal and/or carpet-cleaning companies the following Monday or Tuesday. Wright testified that she contacted several companies prior to speaking with Danny Mattison, the owner of Royal Carpet, the week of October 8, 2001. Feeling confident that Mattison could help her, she arranged for Mattison to meet with her and an insurance adjuster on October 11, 2001.
¶ 3. When he arrived, Mattison found that Wright had removed the standing water and water-soaked carpet from her home. Prior to placing two dehumidifiers and two fans in the affected areas of the home, Mattison checked the moisture levels in the home and applied Microban X-580 (Microban), an antimicrobial agent. Mattison and Wright discussed the precautions stated on Microban's label, and Mattison informed Wright that, pursuant to those precautions, she should vacate the area for twenty minutes after the antimicrobial agent was applied. Wright informed Mattison that she would be staying with her mother, so she would not be staying in the home while the cleanup and drying process was ongoing.
¶ 4. Mattison left the dehumidifiers and fans operating for three days, and he then rechecked the moisture levels and found them to be within normal limits for the region. Mattison testified that he suggested to Wright that she have the baseboards and tile flooring removed from the home, but she declined because of the expense. At trial, Wright disputed his testimony and stated that he never suggested she remove the baseboards or tile flooring. Mattison returned to Wright's home in November 2001 because Wright complained of a chemical smell and that she was experiencing allergic-type reactions. Mattison wiped down the area where he had applied the Microban. Mattison testified that he found no indication of mold growth in the home at this visit or the prior visit in October 2001.
¶ 5. In an effort to find the source of Wright's problem, Mattison suggested that she have the air conditioning duct work examined and possibly cleaned in case there was mold growth within it. Wright contracted with Service ProSouth, and the company cleaned and disinfected the duct work in October or November 2001. The last time Wright had "any dealings" with Mattison was November 15, 2001.
¶ 6. After Mattison dehumidified her home, Wright attempted to "air out" her house, so she left the windows open for approximately four weeks, after which time she closed up the home and did not return. At some point, mold grew behind the baseboards in Wright's home. However, even Wright's expert acknowledged it was unknown when the mold growth in Wright's home occurred; he stated that it could have been caused by the initial water leak or by Wright's actions of leaving the home open to the elements and then closing it up. In any event, the baseboards were eventually removed, and some mold growth was discovered. Wright never returned to live in the home because she stated that it made her sick. Wright placed some of her belongings in a non-climate-controlled metal storage building behind her home and in her garage, and she burned some of her personal property, such as clothing, because she said that the *113 clothing made her skin burn and itch despite being washed several times.
¶ 7. Wright testified that, between November 2001 and sometime in 2005, she worked with her insurance company to have her home repaired, and she received three estimates from three different contractors in 2002 to 2003, as well as a check from the insurance company for the repairs. She also testified that the insurance company offered to have her clothes professionally cleaned. Wright testified that she refused to cash the check from the insurance company or have her home repaired because no one "could guarantee that [she] could live there again without health problems." She testified that she would not let the insurance company have her clothes cleaned because she had already tried to clean them, and it did not work. She also stated that based upon her reading, she believed that the method of cleaning mentioned by the insurance company was not "a good thing." At trial, Wright testified that she blamed the insurance company and Mattison for allowing mold to grow in her home.
¶ 8. As mentioned, prior to trial, Wright made a motion in limine to exclude any evidence of homeowner's insurance arguing that allowing such evidence would violate the collateral-source rule. Royal Carpet contended that Wright's receipt of insurance payments and offers to repair were necessary to show that she had failed to mitigate her damages, and it was necessary to reveal that she had homeowner's insurance because she had made statements specifically blaming the insurance company for one hundred percent of her damages. The trial judge agreed with Royal Carpet and allowed her statements to the insurance company to be admitted. He also allowed questions related to her failure to mitigate her damages. However, the trial judge ruled that the parties were not allowed to discuss the exact amount of money Wright had received. The admission of evidence related to Wright's homeowner's insurance is the sole issue before this Court.

DISCUSSION

WHETHER THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR BY ADMITTING EVIDENCE OF WRIGHT'S HOMEOWNER'S INSURANCE IN VIOLATION OF THE COLLATERAL-SOURCE RULE
¶ 9. "This Court reviews a trial judge's decision to admit or deny evidence under an abuse-of-discretion standard." Robinson Prop. Group, L.P. v. Mitchell, 7 So.3d 240, 243 (¶ 9) (Miss.2009) (citing Whitten v. Cox, 799 So.2d 1, 13 (¶ 27) (Miss.2000)). "If an error involves the admission or exclusion of evidence, this Court `will not reverse unless the error adversely affects a substantial right of a party.'" Id. (citation omitted). It is well settled that "a defendant tortfeasor is not entitled to have damages for which he is liable reduced by reason of the fact that the plaintiff has received compensation for his injury by and through a totally independent source, separate and apart from the defendant tortfeasor." Id. (citing Cent. Bank of Miss. v. Butler, 517 So.2d 507, 511-12 (Miss.1987)). In other words, compensation or indemnity received by the plaintiff from a collateral source such as insurance cannot be used by the defendant to mitigate or reduce damages. Id. "However, the collateral[-]source rule applies only when the compensation is for the same injury for which the damages at issue are sought. Further, if evidence is introduced for a purpose other than to mitigate damages, the collateral[-]source rule is not violated and the evidence may be admitted." Geske v. Williamson, 945 *114 So.2d 429, 434 (¶ 18) (Miss.Ct.App.2006) (internal citations and quotations omitted). Yet, we are mindful that the ultimate filter for all evidence is Mississippi Rule of Evidence 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

A. Did Wright waive this issue for failure to raise a timely objection?
¶ 10. The threshold question relating to this issue is whether Wright has waived it on appeal. Royal Carpet argues that Wright has waived any argument related to the preclusion of evidence of her homeowner's insurance because, at trial, she was the first to "ma[k]e mention of insurance, [or] introduce[] evidence regarding her insurance...." In response, Wright argues that she did not "open[ ] the door" to such evidence. Rather, she claims the trial judge opened the door by denying her motion in limine, and she states that she was "merely trying to minimize the damage from the prejudicial ruling." She further argues that "[t]he fact that the trial judge decided to admit inadmissible evidence should not preclude an attorney from doing all he can do to minimize the prejudice." Although we agree that one's attorney should do all that he or she can to minimize the effects of an adverse ruling, that does not eliminate the duty to preserve an issue for appeal by raising a contemporaneous objection. Directly on point to this issue is the case of Quinn v. State, 873 So.2d 1033, 1039 (¶ 28) (Miss.Ct.App.2003), wherein this Court addressed the State's violation of a trial judge's ruling on a motion in limine and held:
The State did in fact violate the motion in limine regarding the amount of money [Katina] Quinn had on her person by specifically questioning [Ellis] Brister about the matter. However, the record is devoid of any objection by Quinn when such question was asked of Brister. Therefore[,] we find that an issue that is not properly brought to the attention of the trial court by appropriate timely objection is waived. The supreme court has repeatedly held that "if no contemporaneous objection is made, the error, if any, is waived."
(Internal citations and quotations omitted).
¶ 11. Although there were instances when Wright's attorney objected to questions about Wright's dealings with her insurance company, there were numerous other references to her communications and negotiations with the insurance company that were either brought up by Wright or were not objected to. For example, during the direct examination of Wright, her attorney introduced into evidence an inventory list requested by Wright's insurance company. Another incidence occurred during the cross-examination of Wright, wherein she testified, without objection, as follows:
[Defense]: And I think you testified a little earlier today, Ms. Wright, that during this whole process since October 11th of 2001[,] you had your insurance company involved in this claim; is that correct?
[Wright]: That's correct.
[Defense]: And that you were working to try to get the house repaired by your insurance company; is that correct?
[Wright]: That's correct.
[Defense]: And they actually sent you three contractor estimates to repair your house; is that correct?
. . . .
[Wright]: Correct. Yes.
*115 ¶ 12. Although there were other presentations of testimony regarding Wright's insurance, it is not necessary to list them all, as even Wright does not dispute that she first introduced to the jury that she indeed had insurance coverage on her home. Despite Wright's contention that she was just trying "to make the best of a bad situation by trying to minimize the damage done by the trial judge's ruling," this issue is procedurally barred by her failure to raise a contemporaneous objection at trial. Procedural bar notwithstanding, we will address the issue on its merits.

B. Did the trial judge commit reversible error by denying Wright's motion in limine?
¶ 13. When faced with a motion in limine, a trial court must find the following two factors present in order to grant the motion: "(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988) (citation omitted). "We will reverse a court's denial [or grant] of a motion in limine only if the court abused its discretion in denying [or granting] the motion." Cridiso v. State, 956 So.2d 281, 289 (¶ 21) (Miss.Ct.App.2006) (citing Brawner v. State, 872 So.2d 1, 13 (¶ 36) (Miss.2004)).
¶ 14. As discussed, Royal Carpet was not entitled to have its damages reduced because Wright received compensation for her damages through a totally independent source, separate and apart from Royal Carpet. See Mitchell, 7 So.3d at 243 (¶ 12). However, if the evidence was introduced for a purpose other than to mitigate Royal Carpet's damages, the collateral-source rule was not violated, and the evidence was properly admitted. Geske, 945 So.2d at 434 (¶ 18) (citing Burr v. Miss. Baptist Med. Ctr., 909 So.2d 721, 729 (¶ 26) (Miss.2005)). We find that the trial judge did not err in his determination that Royal Carpet could elicit testimony about Wright's failure to mitigate the damage caused by the initial water leak.
¶ 15. "Without question, a person injured in tort is required to take reasonable steps to mitigate his damages...." Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1162-63 (Miss.1992); Travelers Indem. Co. v. Rawson, 222 So.2d 131, 135 (Miss.1969) (finding it error to refuse a jury instruction that the plaintiffs had a duty to mitigate damages after wind and rain damaged their home, and they had failed to repair the home for nearly two years). Flight Line, Inc. and Travelers Indemnity are applicable to the case at hand.
¶ 16. At trial, Wright asserted that she blamed both the insurance company and Royal Carpet for the loss of the use of her home, as well as the loss of her personal property. However, it was undisputed that her last encounter with Royal Carpet was on November 15, 2001, slightly over a month after the water leak occurred. Wright had a duty, within a reasonable length of time after the original damage, to remedy the faulty situation and prevent subsequent damage. Travelers Indem. Co., 222 So.2d at 135 (citation omitted). Testimony established that Wright was offered the means to repair the damage years earlier, but she had obstinately refused because no one could give her a one-hundred-percent guarantee that she would never get sick if she occupied the home after the repairs. From the record, we find that the evidence of insurance was offered for a reason other than to allow Royal Carpet to mitigate its damages. It was offered to show that Wright had failed *116 to mitigate her damages. Therefore, we do not find that its admission violated the collateral-source rule. Accordingly, we find no error in allowing Royal Carpet to question Wright about her refusal to try and remedy her situation for six years, despite being given the means and opportunity to do so by her insurance carrier several years earlier.

C. Did the trial court err in allowing testimony related to Wright's letter to her insurance company?
¶ 17. Royal Carpet sought to introduce evidence related to a letter that Wright sent to her insurance company on June 23, 2003. In that letter, she placed one hundred percent of the blame for the damage to her real and personal property upon her insurance carrier. Royal Carpet argues that it was admissible because it was a statement against interest, and the trial court determined that it was an admissible statement, as an admission. We agree that it was admissible, but it was not a statement against interest under the hearsay exception of Mississippi Rule of Evidence 804(b)(3) because Wright was not an unavailable witness. Rather, it was admissible under Mississippi Rule of Evidence 801(d)(2), as an admission by party-opponent.
¶ 18. Under Mississippi Rule of Evidence 801(d)(2), a statement is not hearsay if it "is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth...." Under this rule, the statement is offered against a party as the party's own statement, and it is immaterial whether the declarant is available to testify. Rankin v. State, 963 So.2d 1255, 1259 (¶ 15) (Miss.Ct.App.2007) (the defendant, accused of statutory rape, sent a letter to victim's mother; the court held it was a statement by party-opponent, not a statement against interest, because the declarant was available).
¶ 19. At trial, Wright testified that she was making claims against Mattison for her property loss, both real and personal, as well as for her mental anguish. However, she acknowledged that she had written the letter to her insurance company approximately four years earlier, wherein she stated that she placed all of the responsibility on her insurance company. She also testified that she had not encountered Mattison since November 2001, which was nearly two years prior to her placing the full responsibility with her insurance company. Although there was the danger of prejudice, which the collateral-source rule and Mississippi Rule 403 are designed to avoid, we find that the evidence was offered for a purpose other than to allow Royal Carpet to mitigate its damages, and that the statement's probative value outweighed the possibility of prejudice. Moreover, this issue is also procedurally barred because Wright failed to raise a contemporaneous objection to its admission.

CONCLUSION
¶ 20. Pursuant to the foregoing authorities and analysis, we find that the trial judge did not err or violate the collateral-source rule in allowing into evidence Wright's homeowner's insurance. Accordingly, this issue is without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, P.J., GRIFFIS AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY WITHOUT *117 SEPARATE WRITTEN OPINION. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., LEE, P.J., BARNES AND CARLTON, JJ.
MAXWELL, J., concurring in part and in result:
¶ 22. Although I concur with the result reached by the majority, I disagree that Wright's appeal is procedurally barred.
¶ 23. Wright moved in limine to exclude the introduction of evidence concerning her homeowner's insurance. Prior to trial, the circuit court denied the motion in part and granted it in part. Specifically, the court held that Wright could be questioned about the existence of her homeowner's insurance, but the amount of any prior settlements could not be mentioned.
¶ 24. The supreme court recently acknowledged its long-held view that a "motion in limine regarding the introduction of evidence properly preserve[s] the issue for appeal, and an objection [is] not necessary." Goff v. State, 14 So.3d 625, 640 (¶ 46) (Miss.2009) (citing Kettle v. State, 641 So.2d 746, 748 (Miss.1994)). Thus, I do not find Wright's failure to make a subsequent objection at trial prevents our review of the insurance issues.
¶ 25. Furthermore, I do not believe Wright waived these issues on appeal by introducing evidence she originally sought to exclude in her motion in limine.
¶ 26. I recognize that generally a party may not introduce evidence at trial and then assert on appeal that admission of the evidence constituted reversible error. See Hobson v. State, 730 So.2d 20, 24-25 (¶ 15) (Miss.1998). But this rule is not absolute. Hobson involved a situation where the defendant elicited otherwise inadmissible testimony and then objected to subsequent allusion to or inquiry into that testimony. Id. at 24 (¶¶ 13-14). In applying this general prohibition, the Hobson court reasoned: "If the defendant goes fishing in the state's waters, he must take such fish as he catches." Id. at 25 (¶ 15) (quoting Fleming v. State, 604 So.2d 280, 289 (Miss. 1992)).
¶ 27. However, this general rule does not apply to situations where a litigant accepts, respects, and obeys a trial court's rulings and advances his client's cause in a manner consistent with those rulings. See Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 711 (1984).
¶ 28. In McCullough v. State, 750 So.2d 1212 (Miss.1999), Justice Mills, writing for a majority of the supreme court, addressed this exception to the general prohibition against complaining about evidence one introduces himself. Specifically, he distinguished Hobson from situations such as the one before us, where the trial court makes an adverse ruling that a party must live with. In McCullough, after the circuit court denied the defendant's motion in limine to exclude evidence of a prior shooting, his attorney was forced to adjust his trial strategy and introduce the evidence himself to limit its effect on the jury. Id. at 1215 (¶ 9). The supreme court reasoned: "Once the trial court put the defense counsel in that posture, [appellate courts] should not, by procedurally barring the issue, penalize the defense for attempting to minimize the damage done[.]" Id. at 1216 (¶ 13).
¶ 29. A similar exception to the waiver rule was also discussed in Stong, 456 So.2d at 711. In Stong, our supreme court acknowledged that "[w]hen the trial judge makes a ruling adverse to a litigant, and where that litigant's lawyer has properly noted his objection, that litigant and his lawyer are entitled to try the rest of the case on the assumption that the trial *118 judge's ruling will not be disturbed on appeal." Id. See also Jones v. State, 461 So.2d 686, 702 (Miss.1984). In such instances, our appellate courts "will not imply a waiver from the subsequent conduct which does nothing more than show the lawyer's obligatory respect for the trial judge while at the same time continuing as best can be done the advancement of his client's cause." Stong, 456 So.2d at 711.
¶ 30. Here, there is little doubt Wright's trial counsel adjusted his trial strategy to take the sting out of what he perceived to be damning evidence. This is fully permissible in light of the adverse ruling on the motion in limine.
¶ 31. Accordingly, I agree with the result reached by the majority and its analysis of the circuit court's decision to deny Wright's motion in limine as well as its decision to allow testimony about Wright's letter to her insurance company. However, I believe Wright was entitled to play the hand the court dealt her and that she is not procedurally barred from asserting these issues on appeal.
KING, C.J., LEE, P.J., BARNES AND CARLTON, JJ., JOIN THIS OPINION.
NOTES
[1] Initially, Marcy Wright and her son, John Adams Wright, filed suit against Metropolitan Property and Casualty Insurance Company; MetLife Auto and Home; Economy Premier Assurance Company; Royal Carpet Service, LLC; Service Pro South; Microban Systems, Inc.; and II Rep-Z alleging breach of contract, negligent failure to warn of a known danger, and products liability. However, prior to trial, the Wrights stipulated that John Adams Wright was not making any claim against Royal Carpet and, therefore, dismissed any claims he may have had. This was formalized in an order of dismissal by the Circuit Court of Lowndes County, dated September 6, 2007.